UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICHOLE B.,[1]

                      Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06723 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Nichole B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 12), and Plaintiff's reply (Dkt. 13).  For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 12) is denied.

---

[1]      The complaint spells the plaintiff's first name as "Nicole" but the administrative record uses the spelling "Nichole" which the Court presumes is the correct spelling. According, the Clerk of Court is directed to amend the caption so that the plaintiff's first name is spelled "Nichole".

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 20, 2017.  (Dkt. 10 at 20, 187-193).[2]  In her application, Plaintiff alleged disability beginning December 31, 2015, due to pseudotumor cerebri, fibromyalgia, migraines, attention deficit disorder, and depression.  (*Id.* at 20, 187, 215).  Plaintiff's application was initially denied on April 11, 2017.  (*Id.* at 20, 99-108).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger on April 30, 2019, in Buffalo, New York.  (*Id.* at 20, 38-63).  On July 26, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 20-32).  Plaintiff requested Appeals Council review; her request was denied on July 24, 2020, making the ALJ's determination the Commissioner's final decision.   (*Id.* at 6-11).   This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[2]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that

Plaintiff met the insured status requirements of the Act through March 31, 2021.  (Dkt. 10 at 22).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 31, 2015, the alleged onset date.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: chronic migraine headaches, fibromyalgia, pseudotumor cerebri, obesity, asthma, and petit mal seizure disorder.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of mild degenerative disc disease of the cervical and lumbar spine, right knee chondromalacia, anxiety, depression, and ADHD were non-severe.  (*Id*. at 22-23).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 24).  The ALJ particularly considered the criteria of Listings 3.03, 11.00, and the effects of Plaintiff's obesity and fibromyalgia in reaching his conclusion.  (*Id.* at 24-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff] can climb ramps, stairs, ladders, ropes, or scaffolds occasionally, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally.   [Plaintiff] can never work at unprotected heights, around moving mechanical parts, or with operating a motor vehicle.  She can work in humidity and wetness occasionally, in dust, odors, fumes, and pulmonary irritants occasionally, and in extreme cold and extreme heat occasionally.

(*Id.* at 25-26).

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a daycare center worker. (*Id.* at 31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 32).

## II.   **Remand for Further Administrative Proceedings is Required**

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that the ALJ erred in his weighing of the medical evidence related to Plaintiff's migraines and fibromyalgia, causing the RFC to be unsupported by substantial evidence. In response, the Commissioner argues that substantial evidence supports the ALJ's RFC and that the ALJ properly weighed the medical evidence before him. As further explained below, the Court agrees that remand for further proceedings is necessary.

### A.   **Legal Standard for Evaluating RFC and Medical Opinion Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence

or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).

Similarly, the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)).  "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the

> Social Security Administration's attention that tend to support or contradict
> the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015)

(quotation and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to

apply the treating physician rule, under which a treating physician's opinion is entitled to

"controlling weight" if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ

declines to afford controlling weight to a treating physician's medical opinion, he or she

"must consider various factors to determine how much weight to give to the opinion."

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

An ALJ's failure to explicitly apply the requisite factors is a "procedural error."  *Estrella

v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is

harmless if "a searching review of the record" confirms "that the substance of the treating

physician rule was not traversed."  *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give

good reasons in [his] notice of determination or decision for the weight [he gives to the]

treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*,

149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that 'the

Commissioner "will always give good reasons"' for the weight given to a treating source

opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by

- 8 -

the evidence in the case record, and must be sufficiently specific. . . .” *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

“Unlike a treating source, a ‘nontreating source’ is defined as a ‘physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].’” *Cardoza v. Comm’r of Soc. Sec.*, 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019) (quoting *Calixte v. Colvin*, 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016)). “The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in which the ALJ is ‘not required to articulate how [he or she] considered evidence’ is from nonmedical sources.” *Erin B. v. Comm’r of Soc. Sec.*, No. 5:21-CV-248 (CFH), 2022 WL 2355429, at *8 (N.D.N.Y. June 30, 2022) (quotation and citation omitted); *Brittani P. v. Comm’r of Soc. Sec.*, No. 1:20-CV-775 (JLS), 2022 WL 1645811, at *3 (W.D.N.Y. May 24, 2022) (“For medical opinions of consultants or non-treating sources, 20 C.F.R. § 404.1527(c)(3) provides that ‘because non[-]examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.’” (quoting *Messina v. Comm’r of Soc. Sec. Admin.*, 747 F. App’x 11, 16 n.4 (2d Cir. 2018)).

### B.   **Migraines**

In this case, the ALJ found that Plaintiff’s chronic migraine headaches were a severe impairment but that “the evidence does not support migraines, headaches, or seizures at the

frequency or duration alleged by [Plaintiff]."  (Dkt. 10 at 27).  Plaintiff argues that the ALJ

did not adequately address her allegations and treatment history of migraine headaches, or

explain his reasoning for the weight given to the medical opinion evidence.  She further

argues that the Commissioner placed too much emphasis on the lack of pain medications

and normal objective findings to reject Plaintiff's allegations and functional limitations

arising from her migraines.  The Court agrees.

Noncompliance with treatment and lack of pain medications are appropriate

considerations in evaluating a claimant's limitations.  *See James D. v. Comm'r of Soc. Sec.*,

No. 1:20-CV-00720 EAW, 2021 WL 2793667, at *8 (W.D.N.Y. July 6, 2021) ("It was

proper for the ALJ to consider . . . Plaintiff's . . .  conservative treatment in assessing the

credibility of his subjective complaints." (citing *Rivera v. Comm'r of Soc. Sec.*, 368 F.

Supp. 3d 626, 646 (S.D.N.Y. 2019) ("While conservative treatment alone is not grounds

for an adverse credibility finding . . . the ALJ may take it into account along with other

factors."))); *see also Kenneth W. v. Comm'r of Soc. Sec.*, No 1:19-CV-0825, 2020 WL

7385251, at *7 (W.D.N.Y. Dec. 16, 2020) (ALJ properly considered plaintiff's

noncompliance with treatment as relevant to the evaluation of his subjective allegations).

But here, Plaintiff highlights, and the Commissioner does not dispute, that:

> Since the alleged onset date, Plaintiff trialed multiple medical modalities,
> including: Toradol injections on January 2 and 5, 2015 (T 366-39, 828);
> Migraine Protocol IV infusion on January 4, 2015 (T 827); occipital nerve
> block and Gabapentin on January 21, 2016 (T 312-14); Nucynta on February
> 3, 2016 (T 835); Diamox on April 22, 2016 (T 396); trigger point injections
> on May 24, 2016 (T 850); Tramadol on August 1, 2016 (T 864); Zonegran
> on November 8, 2016 (T 798); Verapamil and Naprosyn on June 13, 2017 (T
> 1034); Imitrex and Zanaflex on June 29, 2018 (T 1161); and an increased
> dosage of Duloxetine on October 26, 2018 (T 1124).  On February 8, 2016,
> Dr. Paulus noted that Botox, nerve blocks, trigger points, and infusions

> provided little help or made her symptoms worse.  T 304.  On January 12, and October 24, 2018, Dr. Rawal noted Plaintiff having no relief with Gabapentin, Cymbalta, Percocet, or multiple NSAIDs. T 1152, 1176.  On October 26, 2018, Dr. Deane noted that Plaintiff could not tolerate Gabapentin, and Neurontin and Duloxetine were not helpful.

(Dkt. 11-1 at 15).  Accordingly, the ALJ's reliance on Plaintiff not availing herself of all available medication treatment modalities as a basis to discredit the severity of her symptoms is not entirely legitimate where there is evidence in the record documenting numerous treatment modalities explored, as well as evidence that certain options had even served to worsen Plaintiff's pain.  *See* SSR 16-3P, 2017 WL 5180304, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."); *see also Scott v. Comm'r of Soc. Sec.*, No. 19-CV-00959, 2020 WL 6205693, at *4 (W.D.N.Y. Oct. 22, 2020) ("[N]on-compliance, in and of itself, cannot constitute substantial evidence to support an RFC because non-compliance provides no insight into a plaintiff's ability to perform the basic demands of work.  The ALJ appears to infer that non-compliance equates to no limitations; however, such an inference is improper.").  This is not a case where Plaintiff simply opted not to attempt to treat the condition.

Further, the ALJ highlighted Plaintiff's largely normal neurological results and lack of objective findings in discounting the severity of her symptoms.  But corroborating objective evidence is not necessary to establish the presence of migraine headaches. *Ramona R. v. Saul*, No. 19-CV-1630F, 2021 WL 732694, at *4 (W.D.N.Y. Feb. 25, 2021)

("In particular, district courts within the Second Circuit, including this court, have repeatedly acknowledged that there is no objective test for migraine headaches."); *Brandy Marie T.A. v. Comm'r of Soc. Sec.*, 2019 WL 2264977, at * 4 (N.D.N.Y. May 28, 2019) ("[M]any, many cases have noted the elusive nature of migraines and have rejected opinions of ALJs that have found migraines not to be severe based upon the lack of objective evidence." (citing cases)).  While a lack of objective findings is not wholly irrelevant, *see Marozzi v. Berryhill*, 6:17-CV-6864-MAT, 2019 WL 497629, at *5 (W.D.N.Y. Feb. 8, 2019) (holding that ALJ properly considered lack of objective evidence supporting treating physicians' opinions when weighing those opinions), it cannot alone form the basis of a conclusion as to the severity of Plaintiff's migraines.  Moreover, Plaintiff's medical records are replete with records documenting her complaints of migraines throughout the relevant time period so there is no lack of evidence supporting the frequency and severity of Plaintiff's migraines.

In sum, Plaintiff's lack of medication and largely normal test results do not provide substantial evidence to support the ALJ's conclusion to discount the severity of Plaintiff's migraines.  *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 LJL BCM, 2020 WL 8167136, at *20 (S.D.N.Y. Dec. 30, 2020) (noting that an ALJ may not reject a claimant's subjective complaints based on "unsupported interpretations of raw medical evidence or mischaracterizations of the record"), *adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

In addition, and further undercutting the ALJ's determination, Plaintiff raises credible challenges to the ALJ's assessment of the medical opinion evidence relating to her

migraines.

On September 8, 2016, consultative examiner Dominic Cirillo, M.D., examined Plaintiff.  Among other opinions, Dr. Cirillo opined that Plaintiff "would have schedule interruptions due to the nature of her chronic migraines and also would have difficulties in loud or very bright environments."  (Dkt. 10 at 771).  The ALJ gave the majority of Dr. Cirillo's opinion substantial weight because his findings, diagnoses, and limitations were consistent with the medical record; however, the ALJ did "not find support for schedule interruptions or the need to avoid loud or very bright environments due to migraines, as also discussed above."  (*Id.* at 30).  While the ALJ is free to credit some or all of a medical source statement, he is not entitled to "cherry pick" only those portions which support his finding on disability.  *McCall v. Colvin,* No. 15-CV-6383P, 2017 WL 631352 (W.D.N.Y. Feb. 16, 2017) ("The ALJ's explanation for rejecting the limitations assessed by [the consultative psychiatric examiner] relating to [Plaintiff's] ability to interact with others and to deal with stress limitations, while adopting the remainder of [the consultative psychiatric examiner's] opinion, was wholly conclusory.  The ALJ reasoned that the limitations were "not internally consistent with the other findings in the examination" and were not "supported by the treatment record and other opinions noted in this decision," although he failed to identify, let alone explain, the internal inconsistencies or the inconsistencies with the record."); *Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).  To the extent that the ALJ was relying on Plaintiff's lack of treatment and objective findings to give no

weight to the portion of Dr. Cirillo's opinion relating to migraines, as explained above, the Court does not deem those reasons to constitute sound bases for such reliance.

Prity Rawal, M.D., Plaintiff's family medicine physician, completed medical sources opinions on June 18, 2018 (*id.* at 1007-08), and April 4, 2019 (*id*. at 1217-18). In both opinions, Dr. Rawal opined that Plaintiff would constantly experience pain severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (*Id.* at 1007, 1217). She indicated that Plaintiff could sit and stand/walk for less than 2 hours in an 8-hour workday and that pain significantly impairs her daily functioning. (*Id.* at 1008, 1218). Dr. Rawal opined that on average, Plaintiff would be likely to be absent from work as a result of her impairments or treatment for more than four days per month. (*Id.* at 1008, 1218).

The ALJ gave Dr. Rawal's June 18, 2018 statement partial weight because "while the diagnoses are generally consistent with the record, Dr. Rawal's limitations exceed the findings in the record, including [her] own examination findings." (*Id.* at 31). He gave the April 4, 2019 statement little weight for the same reasons. (*Id.*).

John Cullen, M.D., Plaintiff's treating neurologist, completed a Headache Medical Source Statement Questionnaire on March 28, 2019. (*Id.* at 1215-16). Dr. Cullen noted Plaintiff's diagnosis of intractable migraines, which he described as causing severe stabbing right sided headaches. (*Id*. at 1215). He indicated that Plaintiff's headaches cause nausea, malaise, photosensitivity, visual disturbances, mood changes, and mental confusion/inability to concentrate. (*Id.*). Dr. Cullen identified lying in a dark room and cold/hot packs as options to make Plaintiff's headaches better and found that her

impairments are reasonably consistent with the symptoms and functional limitations described.  (*Id.* at 1216).  He opined that during times Plaintiff has a headache, she would generally be precluded from performing even basic work activities and need a break from the workplace.  (*Id.*).  Like Dr. Rawal, Dr. Cullen estimated that Plaintiff would be absent from work as a result of her impairment or treatment more than four times a month.  (*Id.*).

The ALJ gave Dr. Cullen's opinion partial weight "because, while the diagnoses are generally consistent with the record, Dr. Cullen's limitations exceed the findings in the record, including his own examination findings."  (*Id*. at 31).

To be sure, treating physicians are not entitled to controlling weight where they are not adequately supported.  *See Katherine Marie S. v. Comm'r of Soc. Sec.*, No. 6:18-CV-00233 (TWD), 2019 WL 1427456, at *10 (N.D.N.Y. Mar. 29, 2019) ("The Second Circuit has recently made it clear that the ALJ need not afford controlling weight to the opinions of a plaintiff's treating physicians when they are not supported by clinical findings and inconsistent with their own records and treatment notes."  (citing *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018))).  But where an ALJ does not give the opinions of a treating physician deference under the treating physician rule, the ALJ is required to provide good reasons for that determination.  *See Pacheco v. Comm'r*, No. 20-CV-5975 (JLC), 2022 WL 702303, at *9 (S.D.N.Y. Mar. 9, 2022) ("Indeed, [c]ourts have not hesitate[d] to remand [cases] when the Commissioner has not provided good reasons."  (quotation and citation omitted)); *Leonard K. v. Comm'r of Soc. Sec*., No. 2:19-CV-00011, 2020 WL 7586433, at *12 (D. Vt. Dec. 22, 2020) (remanding where the ALJ failed to give "good reasons" for failing to accord controlling weight to treating physician opinions).

Here, the conclusory statements provided by the ALJ without citing to any specific evidence that is contradicted by the opinions of Plaintiff's treating providers is error. *Mojbel v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 199, 203 (W.D.N.Y. 2019) (rejecting the "ALJ's one-sentence assertion that [the treating physician's] opinion 'contrasts sharply with the other evidence of record,'" because "[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on such conclusory assertions of inconsistency with the medical record"). Moreover, the ALJ does not rely on any other medical opinion evidence in the record to support the RFC finding with respect to Plaintiff's limitations from her migraines. "In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). An ALJ's subjective impression regarding the validity of a claimant's impairments does not constitute a "good reason" to disregard a treating physician's opinion. *See Clark*, 2010 WL 3036489, at *5 (opining that ALJ's subjective impression of claimant's impairments was not a "good reason" to disregard treating source's opinion). By failing to adopt the absence-related limitations by Drs. Rawal, Cullen, and Cirillo or point to any other medical opinion evidence to justify his determination, the ALJ's determination here is flawed and warrants remand.

## B.    **Remaining Argument**

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for

further administrative proceedings is necessary, the Court declines to reach this argument. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at \*10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at \*23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings.  Defendant's motion for judgment on the pleadings (Dkt. 12) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 26, 2022
        Rochester, New York

- 17 -